# Illinois Official Reports

## Supreme Court

---

**Shawnee Community Unit School District No. 84 v. Illinois Property Tax Appeal Board, 2024 IL 128731**

---

| | |
|---|---|
| Caption in Supreme Court: | SHAWNEE COMMUNITY UNIT SCHOOL DISTRICT NO. 84 *et al.*, v. ILLINOIS PROPERTY TAX APPEAL BOARD *et al.*, Appellees (Shawnee Community Unit School District No. 84, Appellant). |
| Docket No. | 128731 |
| Filed | May 23, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from order of the Illinois Property Tax Appeal Board. |
| Judgment | Appellate court judgment affirmed. <br> Board decision affirmed. |
| Counsel on Appeal | Scott L. Ginsburg and Katie N. DiPiero, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellant Shawnee Community Unit School District No. 84. <br><br> Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Property Tax Appeal Board. |

Thomas J. McNulty, Steven F. Pflaum, David S. Martin, and Andrew Hamilton, of Neal Gerber & Eisenberg LLP, of Chicago, for other appellee.

David J. Braun, S. Jeff Funk, Christine G. Christensen, and Anastasia E. Brunner, of Miller, Tracy, Braun, Funk & Miller Ltd., of Monticello, for *amici curiae* Illinois Association of School Administrators *et al.*

Mark R. Davis and Whitney T. Carlisle, of O'Keefe, Lyons & Hynes, LLC, and Timothy E. Moran, of Schmidt, Salzman & Moran, Ltd., both of Chicago, for *amicus curiae* The Civic Federation.

Justices

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Neville dissented, with opinion, joined by Justice Holder White.

## OPINION

¶ 1 The primary issue presented in this appeal is whether a taxpayer must pay disputed property taxes as a condition precedent to pursuing an appeal before the Property Tax Appeal Board (PTAB) under section 16-160 of the Property Tax Code (Code) (35 ILCS 200/16-160 (West 2016)). The appellate court concluded that payment of the disputed taxes was not required in order to pursue an appeal. 2022 IL App (5th) 190266. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                     BACKGROUND

¶ 3 Grand Tower Energy Center, LLC (Grand Tower), is the owner of a power plant located along the Mississippi River in Jackson County, Illinois. For the 2014 tax year, the Jackson County assessor imposed an assessed value of $33,445,837 on Grand Tower's property. Grand Tower appealed the assessment to the Jackson County Board of Review, which reduced the assessed value of the property to $31,538,245.

¶ 4 On May 28, 2015, Grand Tower timely filed an appeal to the PTAB under section 16-160 of the Code (35 ILCS 200/16-160 (West 2014)), seeking a reduction of the final assessment imposed by the board of review. Shawnee Community Unit School District No. 84 (School

District), which serves portions of Jackson County and receives funding from property taxes generated in that county, was granted leave to intervene in the appeal.[1]

¶ 5        While its appeal was pending before the PTAB, Grand Tower's 2014 property taxes came due. Grand Tower did not pay the taxes. In December 2015, the Jackson County collector prepared the annual list of properties with delinquent taxes. See *id.* § 21-15. The list included Grand Tower's property and showed that Grand Tower owed $2,557,423.91 in unpaid taxes for 2014.

¶ 6        Thereafter, on January 14, 2016, the collector applied to the circuit court of Jackson County for a judgment and order of sale for taxes on the 2014 delinquent properties, including Grand Tower's. See 35 ILCS 200/21-150 (West 2016). That same day, the court entered a judgment and order of sale pursuant to section 21-180 of the Code (*id.* § 21-180). The court's order stated, in part:

> "[W]hereas issue notice has been given of the intended application for Judgment against said land and lots in said application described, and no sufficient defense having been made or cause shown why Judgment should not be entered against said lands and lots for taxes, *** Judgment *** is hereby entered against the aforesaid tract o[r] tracts of lots or lands *** in favor of the people of the State of Illinois for the sum annexed to each *** and it is Ordered by the Court that the several tracts of lots or lands *** to be sold or forfeited as the law directs."

¶ 7        At a tax sale held on January 19, 2016, an unrelated third party purchased Grand Tower's 2014 taxes.

¶ 8        On August 17, 2016, the School District filed a motion before the PTAB seeking dismissal of Grand Tower's appeal. Citing section 23-5 of the Code (*id.* § 23-5), the School District maintained that Grand Tower was required to pay the 2014 property taxes under protest in order to pursue an appeal before the PTAB. The School District asserted that Grand Tower "could have preserved its right to appeal to the PTAB had it pursued its legal remedies and paid the real estate taxes associated with the Grand Tower Station under protest" but it had not done so. Thus, according to the School District, the appeal should be dismissed.

¶ 9        The School District also raised an additional argument in support of its motion to dismiss. Citing *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159 (1983), the School District maintained that, once the Jackson County collector made the application for judgment and order of sale, the circuit court acquired "jurisdiction over the taxes and all supplemental matters," including the determination of the assessment. The School District argued, therefore, that the PTAB was divested of jurisdiction to review the 2014 assessment and the appeal should be dismissed.

¶ 10        Finally, the School District maintained that the circuit court's entry of the judgment and order of sale stood as a conclusive determination not only of the fact that the taxes were delinquent but also of the correctness of the assessment. The School District argued that Grand Tower "could have presented its defenses or made its objections" to the assessment before the circuit court but failed to do so. As a consequence, according to the School District, Grand

---

[1]The Jackson County Board of Review was a party in the PTAB proceedings and the appellate court but is not participating in this appeal.

Tower "was collaterally estopped from disputing the assessment," and the appeal should be dismissed for this reason as well.

¶ 11    In a written order dated September 19, 2016, the PTAB denied the School District's motion to dismiss. A motion to reconsider was denied on November 4, 2016.

¶ 12    For the 2015 tax year, the Jackson County Board of Review again imposed a final assessed valuation of $31,538,245 on Grand Tower's property, and in February 2016, Grand Tower again filed an appeal to the PTAB challenging the assessment. The PTAB consolidated Grand Tower's 2015 appeal with the 2014 appeal. Like the 2014 taxes, Grand Tower's 2015 taxes also went unpaid and were sold to the same party that had purchased the 2014 taxes.

¶ 13    In August 2017, Grand Tower redeemed the 2014 and 2015 taxes. Grand Tower paid the full amount of the taxes due, plus penalties and interest, as required by section 21-355 of the Code (35 ILCS 200/21-355 (West 2016)).

¶ 14    On June 18, 2019, following an evidentiary hearing, the PTAB issued a lengthy written decision on Grand Tower's consolidated appeals. In its decision, the PTAB was highly critical of the methodology employed by the School District's valuation expert and found that Grand Tower had proved, by a preponderance of the evidence, that its property had been overvalued for tax years 2014 and 2015. As a result of the PTAB's decision, the assessed value of Grand Tower's property for each of the 2014 and 2015 tax years was reduced from $31,538,245 to $3,333,000. The School District subsequently appealed the PTAB's decision directly to the appellate court pursuant to section 16-195 of the Code (*id.* § 16-195).

¶ 15    On appeal, the appellate court affirmed the decision of the PTAB. 2022 IL App (5th) 190266. The appellate court rejected the School District's contention that the PTAB had erred in reducing the assessed valuation of Grand Tower's property, finding that the PTAB's decision was not against the manifest weight of the evidence. *Id.* ¶¶ 70-102. The court also rejected the School Board's contention that the PTAB had erred in denying its motion to dismiss. *Id.* ¶¶ 45-69. The appellate court held that payment of the contested taxes was not a condition precedent to pursuing an appeal before the PTAB and that the tax sale proceedings in the circuit court did not divest the PTAB of jurisdiction to review the 2014 and 2015 property assessments. *Id.* ¶ 69.

¶ 16    We allowed the School District's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). We also allowed the Illinois Association of School Administrators and the Illinois Association of School Boards to file a brief *amicus curiae* in support of the School District's position and the Civic Federation to file a brief *amicus curiae* in support of Grand Tower and the PTAB's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 17                                ANALYSIS

¶ 18    In this court, the School District does not challenge the appellate court's judgment affirming the PTAB's reduction of the assessments for the 2014 and 2015 tax years. Instead, the School District contends only that the appellate court erred in affirming the PTAB's denial of the School District's motion to dismiss.

¶ 19              I. Timely Payment of Taxes Before Seeking PTAB Relief

¶ 20    The School District first argues that the PTAB should have granted the motion to dismiss because Grand Tower did not timely pay its property taxes before seeking assessment relief.

According to the School District, timely payment of the taxes is a condition precedent to pursuing an appeal before the PTAB.[2] We disagree.

¶ 21   The PTAB is a state agency created in 1967 to review taxpayer challenges to property tax assessments imposed by local boards of review. *Cook County Board of Review v. Property Tax Appeal Board*, 339 Ill. App. 3d 529, 535 (2002). The statutory provisions governing the administration of the PTAB are set forth in article 16 of the Code (35 ILCS 200/16-160 to 16-195 (West 2016)).

¶ 22   Section 16-160 of the Code (*id.* § 16-160), defines the procedure taxpayers must follow to appeal property tax assessments to the PTAB. Section 16-160 provides, in relevant part:

> "any taxpayer dissatisfied with the decision of a board of review or board of appeals as such decision pertains to the assessment of his or her property for taxation purposes, or any taxing body that has an interest in the decision of the board of review or board of appeals on an assessment made by any local assessment officer, may, (i) in counties with less than 3,000,000 inhabitants within 30 days after the date of written notice of the decision of the board of review *** appeal the decision to the Property Tax Appeal Board for review. *** Such taxpayer or taxing body, hereinafter called the appellant, shall file a petition with the clerk of the Property Tax Appeal Board, setting forth the facts upon which he or she bases the objection, together with a statement of the contentions of law which he or she desires to raise, and the relief requested." *Id.*

¶ 23   Nothing in section 16-160 states that a taxpayer is required to pay the disputed property taxes in order to pursue an appeal of an assessment before the PTAB. Rather, section 16-160 requires only that the taxpayer file a petition with the clerk of the PTAB within 30 days of the local review board's decision on an assessment, regardless of whether any property tax payment is due.

¶ 24   The 30-day deadline for filing the petition is significant. Because the property tax imposed on a taxpayer is determined by multiplying the assessed value of the property by the tax rate (*id.* § 18-45), the assessment decision is made well in advance of the extension of the tax. The 30-day deadline therefore means that, in almost every instance, the taxpayer must initiate an appeal with the PTAB *before* the actual tax payments are due for the tax year in question. *Cf.*

---

[2]The dissent repeatedly asserts that we have "misstate[d] the central issue in this case" and that "[t]he School District does not argue that payment of property taxes constitutes a condition precedent to filing an appeal with the [PTAB]." *Infra* ¶ 74. This is incorrect. As in the trial court and the appellate court (see 2022 IL App (5th) 190266, ¶¶ 45-58), the School District first argues in this court that the PTAB erred in denying its motion to dismiss because Illinois taxpayers are required "to make timely payments before seeking assessment relief" and, specifically, that the payment under protest requirement of section 23-5 of the Code (35 ILCS 200/23-5 (West 2016)) "set[s] forth a condition precedent for objecting to property taxes generally before any forum." This argument has been the School District's primary contention throughout this litigation. Indeed, fully two-thirds of the analysis portion of the School District's opening brief in this court is devoted to this issue. Grand Tower recognizes this point, stating that the first issue in this appeal is whether "the Property Tax Appeal Board err[ed] when it concluded that the Property Tax Code does not require a taxpayer to pay the disputed property tax, under protest or otherwise, as a condition of maintaining an appeal to PTAB under Section 16-160 of the Code." The dissent's repeated assertions that we have "misstated" the School District's arguments are inaccurate and unwarranted.

- 5 -

*Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 308 (2010) (noting that a taxpayer can immediately challenge an assessment before a local board of review "before any taxes are due and payable"). It would be unreasonable to conclude that the legislature made paying disputed property taxes a condition precedent to pursuing an appeal of an assessment before the PTAB when, at the time of initiating the appeal, the taxpayer has not yet even received a property tax bill.

¶ 25    Further support for the conclusion that payment of the disputed taxes is not a condition precedent to pursuing an appeal before the PTAB can be found in section 16-185 of the Code (35 ILCS 200/16-185 (West 2016)). That provision states, in part:

> "The extension of taxes on any assessment so appealed shall not be delayed by any proceeding before the [PTAB], and, in case the assessment is altered by the [PTAB], any taxes extended upon the unauthorized assessment or part thereof shall be abated, or, *if already paid*, shall be refunded with interest as provided in Section 23-20." (Emphasis added.) *Id.*

¶ 26    The inclusion of the phrase "if already paid" in section 16-160 shows conclusively that payment of the disputed property taxes is not required to pursue an appeal before the PTAB. If payment were required, there would be no need to include that language. Accordingly, by their plain terms, sections 16-160 and 16-185 do not require payment of the disputed property taxes as a condition precedent to pursuing an appeal before the PTAB.

¶ 27    Despite the foregoing, the School District nevertheless maintains that payment of the disputed property taxes is required to pursue an appeal. In support, the School District points to section 23-5 of the Code (*id.* § 23-5), a provision that governs the filing of tax objection complaints in the circuit court.

¶ 28    A tax objection complaint (see *id.* § 23-10) provides an alternative means of challenging a property tax assessment imposed by a local board of review. *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 477-78 (2008). The two options for challenging an assessment—an appeal to the PTAB and the filing of a tax objection complaint—are mutually exclusive. *Id.* at 477. A taxpayer seeking review of an assessment before the PTAB may not file a tax objection complaint challenging the assessment in circuit court, and a taxpayer who files a tax objection complaint challenging an assessment in circuit court may not file an appeal before the PTAB. *Id.* at 477-78.

¶ 29    Section 23-5 requires that a taxpayer who files a tax objection complaint pay the disputed taxes "under protest" as a condition precedent to filing the complaint. Section 23-5 states:

> "Payment under protest. *** [I]f any person desires to object to all or any part of a property tax for any year, for any reason other than that the property is exempt from taxation, he or she shall pay all of the tax due within 60 days from the first penalty date of the final installment of taxes for that year. Whenever taxes are paid in compliance with this Section and a tax objection complaint is filed in compliance with Section 23-10, 100% of the taxes shall be deemed paid under protest without the filing of a separate letter of protest with the county collector." 35 ILCS 200/23-5 (West 2016).

¶ 30    Stressing that section 23-5 states that the "payment under protest" requirement applies to "any person" objecting to "any part" of a property tax for "any reason," the School District argues that the requirement applies to taxpayers who bring appeals before the PTAB. We reject this contention.

¶ 31        Section 23-5 appears in article 23 of the Code, which is titled "Procedures and Adjudication for Tax Objections." *Id.* art. 23. Section 16-160, the provision setting forth the procedure for initiating an appeal before the PTAB, appears in an entirely different part of the Code, article 16 (*id.* art. 16), titled "Review of Assessment Decisions." The two means of challenging an assessment, the tax objection complaint and the appeal to the PTAB, are different procedures. In the absence of language indicating otherwise, there is no reason to presume the legislature intended that a statutory provision governing one should also apply to the other.

¶ 32        Further, the second sentence of section 23-5 expressly references section 23-10 of the Code (the provision that authorizes the filing of tax objection complaints), indicating that the payment of taxes in accordance with section 23-5 satisfies the "payment under protest" requirement for filing the complaint. However, section 23-5 contains no reference to section 16-160 or, indeed, to any statutory provision related to proceedings before the PTAB. Requiring a taxpayer to pay disputed taxes as a condition precedent to pursuing an appeal is a significant matter. Had the legislature intended the "payment under protest" requirement of section 23-5 to apply to PTAB appeals, there would be some reference to section 16-160 in that provision. There is none. By its express terms, section 23-5 applies to tax objection complaints, not appeals filed in the PTAB.

¶ 33        In addition, a fundamental contradiction arises when attempting to apply section 23-5 to PTAB appeals. If the "payment under protest" requirement of section 23-5 were also a condition precedent to pursuing an appeal before the PTAB, the taxpayer appealing to the PTAB would have to file a tax objection complaint, since it is this complaint, and *only* this complaint, that constitutes the statutorily required "protest." However, section 16-160 *expressly prohibits* a taxpayer who appeals to the PTAB from filing a tax objection complaint. That section states: "If a petition is filed by a taxpayer, the taxpayer is precluded from filing objections based upon valuation, as may otherwise be permitted by Sections 21-175 and 23-5." *Id.* § 16-160. Such an internally contradictory approach is unworkable and could not have been intended by the legislature. See, *e.g.*, *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 16 (we presume the legislature does not intend absurd results).

¶ 34        Citing *Clarendon Associates v. Korzen*, 56 Ill. 2d 101, 106 (1973), *Central Illinois Public Service Co. v. Thompson*, 1 Ill. 2d 468, 471 (1953), and other cases, the School District also argues that the "payment under protest" requirement of section 23-5 must apply to taxpayers pursuing an appeal before the PTAB because, otherwise, a "loophole" would be created that "resurrect[s] an antiquated process that allows taxpayers to 'harass' units of local government by refusing to pay their taxes while awaiting relief from the assessments or as a means to negotiate a more favorable property tax settlement." This argument is unpersuasive.

¶ 35        As this court has explained, prior to 1933, there was no statutory mechanism in place that allowed taxpayers to pay taxes under protest and, at the same time, file an objection to a property assessment. *Clarendon*, 56 Ill. 2d at 106. Instead, a taxpayer wishing to challenge an assessment would withhold paying the property taxes, and then, once the county collector made the annual application for judgment and order of sale, the taxpayer would submit the objection to the assessment in that proceeding. *Id.* When a large number of taxpayers followed this procedure (as happened during the Great Depression), adjudication of the objections was often delayed. *Id.* This, in turn, led to a delay in determining the final amount of taxes due, the entry

of any findings of delinquency, and the ordering of judicial tax sales, all of which "severely impaired the collection of taxes and thus the functions of governmental units." *Id.*

¶ 36    The concerns regarding delays described in cases such as *Clarendon* are not present with appeals before the PTAB. Section 16-185 of the Code expressly states that "[t]he extension of taxes on any assessment so appealed [to the PTAB] shall not be delayed by any proceeding before the Board." 35 ILCS 200/16-185 (West 2016). This means that the existence of an appeal before the PTAB does not prevent or delay the county clerk from sending the taxpayer a property tax bill, which the taxpayer is required to pay. And, unlike the situation in cases such as *Clarendon*, if the taxes go unpaid, the existence of a PTAB appeal does not prevent or delay a county collector's application for judgment and order of sale, a finding of delinquency, or the subsequent judicial sale of the taxes. The type of delay and "harassment" described in cases like *Clarendon* simply is not present, even if the "payment under protest" requirement of section 23-5 is not applied to the PTAB appeal.

¶ 37    Finally, the School District cites a footnote from this court's decision in *Madison Two Associates*, 227 Ill. 2d at 477 n.2 (citing 35 ILCS 200/16-185 (West 2002)), which states:

> "Unlike the tax objection alternative, paying the property tax is not a prerequisite for seeking relief from the [PTAB]. Pursuing the appeal through the [PTAB] does not, however, stay the obligation to pay the contested tax. If the tax falls due before the [PTAB] issues its decision, the tax must still be paid. If the [PTAB] subsequently lowers the assessment, any taxes paid on the portion of the assessment determined to have been unauthorized must be refunded with interest."

¶ 38    According to the School District, this court's statement that "paying the property tax is not a prerequisite for seeking relief from the [PTAB]" means only that the taxpayer need not pay the property taxes to *initiate* an appeal. The subsequent statement that, "[i]f the tax falls due before the [PTAB] issues its decision, the tax must still be paid" means that the "payment under protest" requirement is a condition of *maintaining* the appeal. Because that did not happen here, the School District contends the 2014 and 2015 appeals should have been dismissed. Again, we disagree.

¶ 39    The statement that, "[i]f the tax falls due before the [PTAB] issues its decision, the tax must still be paid" means only that the pendency of a PTAB appeal does not stay enforcement of the Code's provisions regarding tax collection and enforcement. See 35 ILCS 200/16-185 (West 2016). The statement does not mean that payment of the tax is a condition precedent to maintaining an appeal before the PTAB. "[T]his court has long held that '[t]axing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond its clear import. In cases of doubt they are construed most strongly against the government and in favor of the taxpayer.' " *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202 (1989) (quoting *Mahon v. Nudelman*, 377 Ill. 331, 335 (1941)).

¶ 40    Here, the "clear import" of section 23-5 is that the "payment under protest" requirement applies only to tax objection complaints filed in the circuit court. Accordingly, we hold that the payment of disputed property taxes is not a condition precedent to pursuing an appeal before the PTAB under section 16-160 of the Code.

¶ 41                          II. Jurisdiction Over Grand Tower's Tax Liability

¶ 42        The School District also contends, however, that the PTAB erred in denying its motion to dismiss for an additional reason. The School District notes that, in *Vulcan Materials*, this court stated that "a tax-sale proceeding is *in rem* and the court acquires jurisdiction over the land when the county collector makes his application for judgment and order for sale." *Vulcan Materials*, 96 Ill. 2d at 165. Relying on this statement, the School District maintains that the circuit court acquired jurisdiction to determine Grand Tower's property tax assessment when the Jackson County collector made the applications for judgment and orders of sale regarding the 2014 and 2015 taxes. At that time, according to the School District, the PTAB was divested of its jurisdiction to review the correctness of the assessments, and the motion to dismiss should therefore have been granted. We disagree.

¶ 43        The PTAB acquired jurisdiction to review Grand Tower's property tax assessments when Grand Tower timely filed its petitions pursuant to section 16-160 of the Code (35 ILCS 200/16-160 (West 2016)). No other jurisdictional step was required. While the appeals were pending, the property taxes went unpaid, and the Jackson County collector applied for judgments and orders of sale pursuant to procedures set forth in article 21 of the Code. See, *e.g.*, *id.* § 21-110 (requiring the collector to publish a list of the delinquent properties, giving notice of the intent to seek a judgment and order of sale); *id.* §§ 21-150, 21-160 (setting out the procedures for the collector to follow in applying for a judgment and order of sale); *id.* § 21-180 (establishing the form for a judgment and order of sale).

¶ 44        Importantly, however, *none* of the statutory provisions in article 21 state that the PTAB is divested of its jurisdiction to consider a properly filed, pending appeal once the county collector files a subsequent application for judgment and order of sale. The statutes are entirely silent on this point. And *Vulcan Materials* is not to the contrary. That decision does not concern or discuss the effect a collector's application for judgment and order of sale has on a pending PTAB appeal, and it does not hold that the application for judgment and order of sale divests the PTAB of its jurisdiction.

¶ 45        The legislature knows how to divest the PTAB of jurisdiction. Section 16-160 states, for example, that if an appeal before a local board of review is dismissed because the taxpayer failed to appear, the PTAB "shall have no jurisdiction to hear any subsequent appeal on that taxpayer's complaint." *Id.* § 16-160. If the legislature had intended to divest the PTAB of its jurisdiction when a county collector makes an application for judgment and order of sale, there would be a provision in the Code stating so. Yet there is no such provision. The School District is asking this court to read language into the Code that is not there. This, of course, we may not do. See, *e.g.*, *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24.

¶ 46        Further, the School District's contention that the PTAB loses jurisdiction of an appeal once a county collector makes an application for judgment and order of sale leads to questionable results. Appeals before the PTAB are not limited to taxpayers. A taxing body, such as a county, may appeal a property tax assessment to the PTAB if it believes the assessment is too low. See 35 ILCS 200/16-160 (West 2016). Accepting the School District's argument would mean that, when a county files an appeal with the PTAB, a taxpayer could simply withhold payment of the property taxes and wait until the county collector applies for the annual judgment and order of sale, thereby divesting the PTAB of its jurisdiction to hear the county's appeal. The taxpayer could then pay the taxes before a judicial sale (see *id.* § 21-165) and, in so doing, retain the

- 9 -

property with no risk of an increase in the assessment. No matter how incorrect the assessment might be, the county would no longer have any appeal before the PTAB, and any potential increase in property tax revenue would be lost. We do not think the legislature intended this result.

¶ 47    The governing rule is well settled. "The obligation of citizens to pay taxes is purely a statutory creation, and taxes can be levied, assessed and collected only in the manner *expressly* spelled out by statute." (Emphasis added.) *Millennium Park Joint Venture*, 241 Ill. 2d at 295. Nothing in the Code expressly states that the PTAB is divested of jurisdiction when a county collector makes an application for judgment and order of sale, and such a provision cannot be read into the Code by this court. This is particularly true given that the School District is asking this court to deny a taxpayer its right to an appeal—one *expressly* provided for by the legislature—and negate the proceedings before the PTAB in their entirety. This is not a step this court may take. Accordingly, we conclude that the county collector's application for judgment and order of sale did not divest the PTAB of its jurisdiction to review Grand Tower's properly filed appeals.

¶ 48                              III. Review of the Assessments

¶ 49    In addition to arguing that the PTAB was divested of jurisdiction when the application for judgment and order of sale was filed, the School District also argues that the circuit court's entry of the judgment order itself "precluded further relief from the PTAB." The School District notes that the amount of property taxes a taxpayer must pay is determined by multiplying the assessed value of the property times the tax rate. The School District further notes that, when a circuit court enters a judgment and order of sale, as it did in this case, it must state the amount of the property taxes to be sold. See 35 ILCS 200/21-180 (West 2016) (setting out the requirements for the order). That number, according to the School District, must necessarily include a determination of the assessment, since "a property tax assessment has only one function – to determine the amount that goes into the tax bill." The School District argues that the assessment and the taxes are "inextricably intertwined" and that the circuit court's judgment and order of sale stands as a conclusive determination of the assessment. Thus, the School District maintains that, once the circuit court entered the judgment and order of sale, Grand Tower was precluded or estopped from seeking any further review of the assessments. We disagree.

¶ 50    Prior to 1995, a tax objection brought in the circuit court to challenge an assessment was not filed as a separate complaint but, instead, was filed as a response or defense "within the annual county collector's application for judgment and order of sale of delinquent properties." Report of the Civic Federation Task Force on Reform of the Cook County Property Tax Appeals Process at 7 (Mar. 2, 1995), https://www.civicfed.org/sites/default/files/report_of_the_task_force_on_reform_of_cook_county_property_tax_appeals_process_march_1995.pdf [https://perma.cc/XZ3D-J6LN].[3] The governing statutes at that time reflected this reality and expressly authorized the circuit court to determine the correct amount of the

_____

[3]The Civic Federation is " 'an independent, non-partisan taxpayer watchdog and government research organization.' " *People ex rel. Devine v. Murphy*, 181 Ill. 2d 522, 534 n.1 (1998). Its report was incorporated as part of the legislative history of the 1995 amendments to the Code enacted by Public Act 89-126 (eff. July 11, 1995). *Devine*, 181 Ill. 2d at 534 n.1.

- 10 -

taxes due within the application for judgment and order sale proceedings. Section 21-150, for example, stated:

> "Time of applying for judgment. Except as otherwise provided in this Section or by ordinance or resolution enacted under subsection (c) of Section 21-40, all applications for judgment and order of sale for taxes and special assessments on delinquent properties and *for judgment fixing the correct amount of any tax paid under protest* shall be made during the month of October. In those counties which have adopted an ordinance under Section 21-40, the application for judgment and order of sale for delinquent taxes or *for judgment fixing the correct amount of any tax paid under protest* shall be made in December. In the 10 years next following the completion of a general reassessment of property in any county with 3,000,000 or more inhabitants, made under an order of the Department, applications for judgment and order of sale and *for judgment fixing the correct amount of any tax paid under protest* shall be made as soon as may be and on the day specified in the advertisement required by Section 21-110 and 21-115. If for any cause the court is not held on the day specified, the cause shall stand continued, and it shall be unnecessary to re-advertise the list or notice." (Emphases added.) 35 ILCS 21-150 (West 1994).

Cases decided prior to 1995 would thus speak of the circuit court having "jurisdiction to determine the validity of the assessment" in the application for judgment and order of sale proceedings (*First Lien Co. v. Markle*, 31 Ill. 2d 431, 436 (1964)), because that is where the correctness of a contested assessment was determined.

¶ 51    However, this is no longer the case. Amendments to the Code enacted by the legislature in 1995 expressly *removed* the language (italicized in the statutory quote above) that authorized the circuit court to determine the correctness of the tax when a county collector makes an application for judgment and order of sale. See Pub. Act 89-126 (eff. July 11, 1995) (amending 35 ILCS 200/21-110, 21-115, 21-150, 21-160, 21-170). Thus, under current law, a circuit court does not have the authority to review the correctness of a contested assessment when a collector makes an application for judgment and order of sale. That occurs in an entirely separate proceeding, either in a tax objection complaint or in an appeal before the PTAB.

¶ 52    Section 22-75(b) of the Code states:

> "Any order for the sale of property for delinquent taxes, except as otherwise provided in this Section, shall estop all parties from raising any objections to the order ***, which existed at or before the rendition of the order, and which could have been presented as a defense to the application for the order. The order itself is conclusive evidence of its regularity and validity in all collateral proceedings ***." 35 ILCS 200/22-75(b) (West 2014).

The circuit court's judgment and order of sale in this case could not preclude or estop Grand Tower from seeking review of its 2014 and 2015 assessments before the PTAB because Grand Tower was prohibited, as a matter of law, from challenging those assessments in the circuit court proceeding. Simply put, Grand Tower's challenges to its assessments were not "objections *** which existed at or before the rendition of the order, and which could have been presented as a defense to the application for the order." *Id*.

¶ 53    This court has long applied this understanding of estoppel within the context of tax judgment proceedings and section 22-75(b). In *Markle* for example, this court held that a

taxpayer was estopped from challenging an assessment after the judgment and order of sale had been entered because the objections to the assessment "clearly existed prior to the rendition of the judgment and could have been presented to the court as a defense to the collector's application for judgment." *Markle*, 31 Ill. 2d at 437; see, *e.g.*, *United Legal Foundation v. Department of Revenue*, 272 Ill. App. 3d 666 (1995) (a taxpayer was foreclosed from challenging a tax judgment and order of sale where it had a statutory defense to the county collector's application that could have been raised in the circuit court). That is not the case here.[4]

¶ 54    A judgment and order of sale conclusively establishes that the property taxes are delinquent and are to be sold at a tax sale. However, the entry of that judgment does not estop a taxpayer under section 22-75(b) from pursuing a properly filed appeal challenging an assessment before the PTAB. Accordingly, the appellate court correctly affirmed the PTAB's denial of the School District's motion to dismiss.

¶ 55                                    CONCLUSION

¶ 56    For the foregoing reasons, the judgment of the appellate court, which affirmed the decision of the PTAB, is affirmed.

¶ 57        Appellate court judgment affirmed.

¶ 58        Board decision affirmed.

¶ 59        JUSTICE NEVILLE, dissenting:

¶ 60    This case turns on a simple and previously unquestioned principle: when a defendant, served with process, fails to file a response to a complaint, the court has authority to enter a default judgment finally determining the rights of the parties concerning the matters raised in the complaint. See *Saichek v. Lupa*, 204 Ill. 2d 127 (2003). The Jackson County circuit court's final default judgment of January 14, 2016, entered after Grand Tower failed to respond to the Jackson County collector's complaint, adopted the Jackson County board of review's finding that Grand Tower owed $2,557,423.91 in property taxes for 2014. The default judgment became *res judicata*—a matter decided—after 30 days and barred a second assessment of the

_____

[4]The School District does not contend that the common-law doctrine of *res judicata* precluded Grand Tower from proceeding with its appeal before the PTAB. Nevertheless, the dissent discusses this principle extensively in its analysis. That analysis is clearly misplaced in the context of this case. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 42. Although the circuit court rendered a final judgment in the application for judgment and order of sale proceeding, the School District was not a party in that proceeding. Further, the circuit court proceeding and the administrative proceeding did not concern the same cause of action: the former was an *in rem* action brought by the Jackson County collector to establish whether Grand Tower's taxes were delinquent and should be sold at a tax sale, while the latter was a review of assessment complaints brought by Grand Tower and was limited solely to determining the correctness of those assessments. See, *e.g.*, *Wand v. Illinois Property Tax Appeal Board*, 2023 IL App (2d) 210150-U (noting that the PTAB's jurisdiction is limited to determining the correctness of a contested assessment).

2014 taxes by the Property Tax Appeal Board (PTAB). According to section 22-75(b) of the Property Tax Code (Code) (35 ILCS 200/22-75(b) (West 2014)), the Jackson County circuit court's final default delinquency judgment also estopped Grand Tower from challenging the amount of the assessment. By misconstruing the *res judicata* effect of the Jackson County circuit court's default judgment, entered on January 14, 2016, and by ignoring section 22-75(b)'s estoppel of Grand Tower's appeal to PTAB, the majority's decision permits an administrative agency to contradict the circuit court's order on the amount of Grand Tower's liability for its 2014 property taxes. Accordingly, because the majority (1) disregards the *res judicata* effect of the Jackson County circuit court's January 14, 2016, judgment as a bar to a second proceeding by PTAB to determine Grand Tower's tax liability for 2014; (2) misinterprets section 22-75(b) of the Code which, upon the entry of the Jackson County circuit court's January 14, 2016, default judgment, explicitly estops Grand Tower from challenging the finding that it owed $2,557,423.91 in unpaid taxes for 2014; and (3) ignores or misinterprets consistent well-reasoned precedent construing the Code, I respectfully dissent.

¶ 61                                    I. BACKGROUND
¶ 62                          A. The Board of Review's Assessment
¶ 63        Grand Tower owns a large tract of land and a power generation facility in Jackson County. The county assessor assessed the property for 2014 taxes, and Grand Tower asked the board of review to reduce the assessment. On May 7, 2015, the board of review notified Grand Tower that it reduced the assessment of the property to $31,538,245 for 2014.

¶ 64        On May 28, 2015, Grand Tower filed an appeal with PTAB, challenging the 2014 assessment. PTAB permitted Shawnee Community Unit School District No. 84 (School District) to intervene in the appeal.

¶ 65        While the appeal remained pending before PTAB, the county collector sent Grand Tower a tax bill for 2014, with payment due in November 2015. Grand Tower did not pay the taxes. Jackson County's collector included Grand Tower's property on the delinquency list it prepared in December 2015. The list specified the amount of unpaid taxes assessed against each property on the list. According to the delinquency list, based on the board of review's assessment, Grand Tower owed $2,557,423.91 in unpaid taxes for 2014. The county collector applied to the Jackson County circuit court for an order for sale of all the delinquent properties for the unpaid taxes. Grand Tower filed no defense to the application for an order for sale.

¶ 66        The Jackson County circuit court, in accord with section 21-180 of the Code (*id.* § 21-180), entered a judgment against Grand Tower's property finding Grand Tower liable for 2014 taxes in the amount of $2,557,423.91 and ordering the sale of the property for the unpaid taxes. Grand Tower filed no appeal from the delinquency judgment and the order for sale.

¶ 67        On January 19, 2016, a bidder at the tax sale purchased Grand Tower's property and paid the taxes of $2,557,423.91, as assessed by the board of review, in accord with the delinquency judgment.

¶ 68        The taxes for 2015 followed a similar course: Grand Tower refused to pay the taxes, the collector applied for a delinquency judgment, Grand Tower filed no defense, the circuit court entered a default delinquency judgment against Grand Tower's property for the amount assessed by the board of review, and the bidder at the sale for 2014 taxes also paid the 2015

taxes.

¶ 69                                                B. PTAB and the Appellate Court

¶ 70        In August 2016, the School District filed with PTAB a motion to dismiss Grand Tower's appeal because of Grand Tower's failure to pay the 2014 taxes and the circuit court's entry of a default judgment and an order for sale. PTAB denied the motion.

¶ 71        Grand Tower redeemed the property in August 2017, 19 months after the Jackson County circuit court entered its January 14, 2016, default delinquency judgment and order for sale.

¶ 72        PTAB held a hearing and concluded that the property had a value of about one-tenth of the value assessed by the board of review. PTAB's order concluded with only one form of relief: interested parties could apply to Jackson County's treasurer for a refund of taxes paid in excess of the amount due under PTAB's assessment of the property. The appellate court affirmed PTAB's order. 2022 IL App (5th) 190266.

¶ 73                                                II. ANALYSIS

¶ 74        The majority misstates the central issue in this case. The School District does not argue that payment of property taxes constitutes a condition precedent to filing an appeal with PTAB. *Supra* ¶¶ 1, 20. The School District states at the outset of its argument:

> "With respect to PTAB appeals, the 30-day deadline in almost every conceivable instance necessitates that taxpayers file PTAB appeals before their tax bills are even calculated for the tax year in question. *** Therefore, in most instances PTAB appeals must be filed months before taxpayers pay their taxes."

The School District does not contend that property owners who choose to file appeals with PTAB must pay the taxes before they come due.

¶ 75        Instead, the School District argues that Grand Tower could not continue its appeal because the Jackson County circuit court's default judgment of January 14, 2016, deprived PTAB of jurisdiction over Grand Tower's appeal.

¶ 76        To address the issues argued by the School District, I will rely on cases concerning the *res judicata* and estoppel effects of default judgments under the Property Tax Code. Next, I will use the Code to analyze the School District's argument that Grand Tower's refusal to pay taxes estops Grand Tower from challenging the judgment and seeking a second assessment with an appeal to PTAB. Finally, I will conclude my analysis by questioning some of the assertions the majority makes in support of its holding.

¶ 77                                                A. The Property Tax Code

¶ 78        The legislature set out the basic procedures for tax assessment in articles 9, 12, and 18 of the Code. First, the county assessor determines the fair cash value for each property. 35 ILCS 200/9-155 (West 2014). The county clerk later determines the tax rate applicable to all properties' assessed valuations. *Id.* § 18-45. The assessed value times the tax rate equals the amount of property taxes the owner must pay. *Id.* The county collector sends tax bills to all property owners in the county and keeps a record of all payments. *Id.* §§ 20-5, 20-40.

¶ 79        Article 21 concerns collection when the owner has not timely paid the assessed tax. See *id.* art. 21. After the due date for the payment of taxes, the collector must publish a list of the

delinquent properties, giving notice of the collector's intent to apply for a judgment of delinquency and an order for sale of the properties. *Id.* § 21-110. The collector then applies to the circuit court for a delinquency judgment and an order for tax sales of all properties remaining on the delinquency list. *Id.* §§ 21-150, 21-160. The possible particular grounds for objecting to an application for judgment and order for sale include the defense that "the tax or special assessments were paid prior to the sale." *Id.* § 22-75(b).

¶ 80 For all properties on the delinquency list for which the owner offers no defense to the application for a judgment and an order for sale, the circuit court enters a judgment "in favor of the People of the State of Illinois, for the amount of taxes *** due thereon." *Id.* § 21-180. The form of the court's default delinquency order has remained largely unchanged for more than 60 years. See Ill. Rev. Stat. 1957, ch. 120, ¶ 716. The judgment establishes "the amount of taxes *** due" for each property for which the owner, like Grand Tower, presented no defense to the application for a judgment and an order for sale. See 35 ILCS 200/21-180 (West 2014).

¶ 81         B. The *Res Judicata* Effect of the Default Judgment
           Entered Against Grand Tower's Property

¶ 82 In accord with sections 21-150 and 21-160 (*id.* §§ 21-150, 21-160), in December 2015, the collector for Jackson County applied to the court for an order for sale of all delinquent properties, including Grand Tower's property because Grand Tower refused to pay the taxes due for 2014. Grand Tower did not assert any defense to the application. Accordingly, on January 14, 2016, without any objection, the circuit court entered a default judgment against Grand Tower's property in accord with section 21-180 (*id.* § 21-180). Based on the board of review's finding that the property had an assessed value of $31,538,245, the circuit court ordered a sale of the property for unpaid taxes in the amount of $2,557,423.91, as set out on the delinquency list. See *id.*; see *McChesney v. People ex rel. Kochersperger*, 178 Ill. 542, 548 (1899) (court may enter default judgment against delinquent lands for unpaid property taxes where owner asserts no defense).

¶ 83 Illinois courts have repeatedly held that a default judgment entered when a property owner files no defense to an application for a delinquency judgment for unpaid taxes conclusively determines the amount of the property owner's tax liability. Judgments by default have "the same preclusive effect under the doctrine of *res judicata* as any other judgment." *Housing Authority for La Salle County v. Young Men's Christian Ass'n of Ottawa*, 101 Ill. 2d 246, 251 (1984).

¶ 84 In *People v. Hagerty*, 104 Ill. App. 3d 240, 242 (1982), Hagerty failed to pay the taxes due on her property, and the court, on the collector's application, entered an order for sale of the property. No bidder offered to pay the delinquent taxes, so the State took ownership of the forfeited property. The State then sued Hagerty to recover the unpaid taxes. *Id.* Hagerty argued that the county had imposed an excessive assessed valuation on her property, leading to an overstatement of her tax liability. *Id.* at 244. The *Hagerty* court held that the default judgment the court entered because Hagerty filed no defense to the application for a delinquency judgment conclusively determined the assessed value of the property and the amount of Hagerty's tax liability. *Id.* at 245.

¶ 85    In *People v. Chicago Title & Trust Co.*, 50 Ill. App. 3d 387, 389 (1977), the court similarly held, "After judgment for taxes is entered against realty, the judgment is conclusive evidence of the regularity and validity of the judgment unless the property is exempt from general taxes or where the tax is paid." Again, "the judgment entered on the collector's application therefore must be deemed to act as a bar to further litigation." *Chicago Title & Trust Co. v. Tully*, 76 Ill. App. 3d 336, 341 (1979); see also *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159, 165 (1983).

¶ 86    The majority holds that the Jackson County circuit court's judgment does not conclusively establish the amount of taxes due, as it only "conclusively establishes that the property taxes are delinquent and are to be sold at a tax sale." *Supra* ¶ 54.

¶ 87    The collector alleged in its application that Grand Tower owed $2,557,423.91 in unpaid property taxes for 2014. "[D]efault judgments are always *res judicata* on the ultimate claim or demand presented in the complaint." *Young Men's Christian Ass'n*, 101 Ill. 2d at 251. Thus, the Jackson County circuit court's default judgment stands as *res judicata* on the collector's ultimate claim that Grand Tower owed $2,557,423.91 in unpaid property taxes for 2014.

¶ 88    The default judgment "constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *People v. Kidd*, 398 Ill. 405, 408 (1947). The proceeding on the collector's application and the proceeding before PTAB both addressed the collector's ultimate claim that Grand Tower owed $2,557,423.91 in unpaid property taxes for 2014. The only relief PTAB purported to grant was a reduction of liability for property taxes, thereby clarifying that it addressed the same claim or demand (that Grand Tower owed $2,557,423.91 in unpaid property taxes owed for 2014) determined by the Jackson County circuit court's January 14, 2016, default judgment and order for sale. The circuit court's default judgment against Grand Tower "is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose." *Barry v. Commonwealth Edison Co.*, 374 Ill. 473, 478 (1940).

¶ 89    The proceedings before PTAB make this case very similar to *First Lien Co. v. Markle*, 31 Ill. 2d 431 (1964), and *United Legal Foundation v. Department of Revenue*, 272 Ill. App. 3d 666 (1995). In *Markle*, Markle objected to an error in the assessor's records that led to an overstatement of property taxes for 1956 and 1957. *Markle*, 31 Ill. 2d at 433-44. The assessor acknowledged the error and reduced the amount owed for 1956 and 1957. *Id.* at 434. The Cook County treasurer filed an application for a judgment and order of sale for the 1958 taxes on Markle's property. *Id.* at 432-33. Markle, relying on the objections he presented to the assessor, filed no response to the application. *Id.* at 436. The circuit court entered an unopposed judgment and order for sale of Markle's property for the unpaid taxes as alleged in the treasurer's application. *Id.*

¶ 90    On appeal, this court noted that Markle had good cause for objecting to the tax assessment, but the court held that the default delinquency judgment, entered because Markle filed no response to the application, conclusively established the amount of Markle's liability for 1958 taxes. *Id.* at 437. The circuit court that entered the default judgment had passed no judgment on the validity of Markle's objections, as Markle had not presented any defense to the application for judgment and order for sale.

¶ 91    In *United Legal Foundation*, the United Legal Foundation and the Elijah Muhammad Foundation (collectively, the Foundations) filed an application for an exemption from property

taxes for 1990. *United Legal Foundation*, 272 Ill. App. 3d at 668. When the Department of Revenue (Department) denied the application, the Foundations filed a complaint for administrative review of the Department's decision. *Id.* In 1992, while the complaint for administrative review remained pending, the Cook County treasurer filed an application for a judgment and order for sale of the property for 1990 taxes. *Id.* at 673. The Foundations, relying on the administrative review proceedings, filed no response to the application. *Id.* at 673-74. The circuit court entered the unopposed judgment and order for sale in January 1993. *Id.* at 673 n.4. The *United Legal Foundation* court said, "If a taxpayer fails to object to the [collector's] application, the judgment and order of sale acts as a default judgment against the property for the year in question." *Id.* at 674. The *United Legal Foundation* court held that the default judgment entered on the treasurer's application conclusively established the amount of the Foundations' liability for 1990 taxes. *Id.* at 675-76. The circuit court had not passed judgment on the Foundations' claim for an exemption, as the Foundations had not presented any defense to the application for judgment and order for sale.

¶ 92        Here, similarly, Grand Tower initiated proceedings to contest property taxes for 2014 before the taxes came due. Like Markle and the Foundations, Grand Tower relied on the separate proceedings on its objections and filed no response to the application for judgment and order for sale. Like the circuit courts in *Markle* and *United Legal Foundation*, the Jackson County circuit court here did not consider any of the arguments raised in the separate proceedings on objections to the taxes, as the parties did not present the arguments to the court. In all three cases, the property owner's failure to respond to the application led to the entry of a judgment and order for sale for the amount of unpaid taxes. The results in *Markle* and *United Legal Foundation* should control the result here: the default judgment entered when Grand Tower failed to respond to the application for judgment established conclusively the amount of Grand Tower's liability for 2014 property taxes.

¶ 93                    C. The Code Estops Grand Tower From
                            Contesting Its Property Taxes

¶ 94        Section 22-75 additionally clarifies the consequences of a default delinquency judgment and an order for sale. In *Markle*, the court explained the circuit court's jurisdiction in a tax proceeding and the effect of the circuit court's ruling in delinquency proceedings:

> "The trial court acquired *in rem* jurisdiction of the property and of the subject matter upon the collector's application for judgment and order of sale, and therefore had the power to enter the judgment order against defendants' lands. [Citations.] Whether the assessment was erroneous or illegal, the trial court had the jurisdiction to determine the validity of the assessment, and that determination, no matter how erroneous, is conclusive upon the parties after 30 days ***.
>                    ***
> The finality of the tax judgment and order of sale was clearly established by the legislature in section 270 of the Revenue Act when it provided as follows: 'And any judgment for the sale of real estate for delinquent taxes, except as otherwise provided in this section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment or decree, and could have been presented as a defense to the application for such judgment in the court

- 17 -

wherein the same was rendered, and as to all such questions, the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax or special assessments have been paid or the real estate was exempt from general taxes under this Act or was not subject to special assessment.' Ill. Rev. Stat. 1963, chap. 120, par. 751 [(now codified at 35 ILCS 200/22-75)].

\*\*\*

\*\*\* [T]he judgment and order of sale was conclusive as to defendants' objections to the assessment which clearly existed prior to the rendition of the judgment and could have been presented to the court as a defense to the collector's application for judgment." *Markle*, 31 Ill. 2d at 436-37.

See *Hagerty*, 104 Ill. App. 3d at 245 (predecessor of section 22-75(b) estopped Hagerty from contesting taxes established conclusively by the default delinquency judgment).

¶ 95        Thus, under section 22-75, the Jackson County circuit court's January 14, 2016, default judgment and order for sale estops Grand Tower from objecting to the assessment made part of the judgment for sale. See 35 ILCS 200/22-75(b) (West 2014).

¶ 96                                    D. The Majority's Arguments
¶ 97                          1. The Majority Misstates the *Res Judicata* Effect
                                    of the Default Delinquency Judgment
¶ 98        The majority admits that article 22 of the Code (*id.* art. 22) applies to Grand Tower's property and permits enforcement of the default delinquency judgment (*supra* ¶¶ 52, 54), but the majority holds that the judgment does not establish the amount of taxes owed. Prior to today's decision, Illinois courts consistently held that default delinquency judgments stood as *res judicata* conclusively determining the amount of taxes the property owner owed. See *Markle*, 31 Ill. 2d at 436-37; *Vulcan Materials*, 96 Ill. 2d 159; *United Legal Foundation*, 272 Ill. App. 3d 666; *Hagerty*, 104 Ill. App. 3d at 245; *Tully*, 76 Ill. App. 3d 336; *Chicago Title & Trust*, 50 Ill. App. 3d 387. The majority does not explain what constitutes a final judgment establishing the amount of taxes owed for the properties on the delinquency list if the delinquency judgment, entered in accord with section 21-180, does not finally determine the amount of taxes owed. See 35 ILCS 200/21-180 (West 2014).

¶ 99        The majority contends my analysis of *res judicata* is "misplaced." *Supra* ¶ 53 n.4. "[A] reviewing court has a duty to consider its jurisdiction and to dismiss the appeal if it determines that jurisdiction is wanting." *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984). An adjudicative body has jurisdiction when it has "the power to decide the matter involved." *Herb v. Pitcairn*, 392 Ill. 151, 152 (1945).

¶ 100        Here, the judgment of the circuit court, finally establishing the amount of Grand Tower's property tax liability for 2014, left PTAB with nothing to decide. Therefore, PTAB lacked jurisdiction over Grand Tower's appeal, and the appellate court had a duty to vacate PTAB's order and dismiss the appeal.

"We have power to review judgments of the Appellate Court when they are properly before us, but we cannot review a judgment which the Appellate Court had no jurisdiction to render. \*\*\* [Where PTAB and the Appellate Court lack jurisdiction], this court cannot entertain an appeal from that court for the purpose of passing upon the merits of the case, but for the purpose, only, of vacating or reversing the judgment

- 18 -

of the Appellate Court, with directions to dismiss the appeal." *Kowalczyk v. Swift & Co.*, 317 Ill. 312, 324 (1925).

¶ 101　　The majority also suggests that *res judicata* does not apply because the School District intervened only in the PTAB appeal and not also in the proceedings on the delinquency petition. *Supra* ¶ 53 n.4. For *res judicata* to apply, the court must find "an identity of parties or their privies." *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 294 (1992). "Privity is said to exist between parties who adequately represent the same legal interests. [Citation.] It is the identity of interest that controls in determining privity, not the nominal identity of the parties [citation]." (Internal quotation marks omitted.) *Id.* at 296.

¶ 102　　Jackson County collects tax revenues and distributes those revenues to fund services throughout the county, including the services provided by the School District. Thus, Jackson County and the School District, as cobeneficiaries of the $2,557,423.91 collected from the purchaser in the tax sale of Grand Tower's property, share the same legal interest in the determination of Grand Tower's tax liability in this case. *Res judicata* applies to the Jackson County circuit court's final determination of Grand Tower's tax liability for 2014 property taxes and bars PTAB from redetermining Grand Tower's tax liability.

¶ 103　　　　　　　　　2. The Majority Misconstrues Section 16-185

¶ 104　　According to the majority, the legislature in a single sentence both requires payment of taxes when due and then establishes that the property owner has no obligation to pay the taxes when due. *Supra* ¶ 26.

¶ 105　　Section 16-185 provides,

> "The extension of taxes on any assessment so appealed shall not be delayed by any proceeding before the Board, and, in case the assessment is altered by the Board, any taxes extended upon the unauthorized assessment or part thereof shall be abated, or, if already paid, shall be refunded with interest as provided in Section 23-20." 35 ILCS 200/16-185 (West 2014).

In this context, the sentence means that, if PTAB completes its review before the tax falls due, the property owner needs to pay only the tax found due by PTAB—the decision "abate[s]" the tax. But, as in this case, if PTAB does not complete its review before the tax comes due, the statute provides that "[t]he extension of taxes on any assessment so appealed shall not be delayed by any proceeding before the Board" and, therefore, the owner must pay the tax and PTAB may order a refund of any overpayment.

¶ 106　　　　　　　　　3. The Majority Misconstrues Section 22-75

¶ 107　　The majority asserts,

> "The circuit court's judgment and order of sale in this case could not preclude or estop Grand Tower from seeking review of its 2014 and 2015 assessments before the PTAB because Grand Tower was prohibited, as a matter of law, from challenging those assessments in the circuit court proceeding. Simply put, Grand Tower's challenges to its assessments were not 'objections *** which existed at or before the rendition of the order, and which could have been presented as a defense to the application for the order.' " *Supra* ¶ 52 (quoting 35 ILCS 200/22-75(b) (West 2014)).

¶ 108   Grand Tower had the option of raising all its objections in court, rather than filing an appeal to PTAB. See 35 ILCS 200/23-10 (West 2014). Even after it filed the initial appeal to PTAB, it had the option of withdrawing the appeal to pursue instead the court proceeding. And Grand Tower always had the option of keeping its property off the delinquency list in the first place, and pursuing the appeal to PTAB, by paying the taxes when due. See *id.* § 16-185. Because the facts that form the basis for Grand Tower's objection to the tax assessment were already available to Grand Tower before entry of the default delinquency judgment, the objections existed at or before the rendition of the order, and section 22-75(b) estops Grand Tower from arguing against the amount of taxes found owing in the default delinquency judgment. See *Markle*, 31 Ill. 2d at 436-37; 35 ILCS 200/22-75(b) (West 2014).

¶ 109                  4. The Majority Incorrectly Holds the
                         Legislature Relies on Tax Sales as
                    Complete Protection for the Collection of Taxes

¶ 110   The majority relies on the tax sale as adequate protection for the collection of taxes. *Supra* ¶ 36. Illinois courts have observed that tax sales do not always meet the county's tax collection needs, as no law requires anyone to bid at the tax sale and some properties go unsold. *Hagerty*, 104 Ill. App. 3d at 243; *Tully*, 76 Ill. App. 3d at 341; see 35 ILCS 200/21-260 (West 2014) (concerning sales when no bidder offers to pay the full amount of the unpaid taxes).

¶ 111                    5. The Majority Misconstrues the 1994
                             and 1995 Amendments to the Code

¶ 112   The majority relies on amendments to section 21 regarding the change in procedures when the property owner pays the taxes under protest and files an objection in circuit court challenging the tax. *Supra* ¶¶ 51-52. The 1994 amendments to the Code separated proceedings on tax objections in the circuit court from proceedings on the collector's application for default judgments by taking the properties for which the owner filed an objection under section 23-10 off the delinquency list. Compare 35 ILCS 200/21-150 (West 1996) ("all applications for judgment and order of sale for taxes and special assessments on delinquent properties shall be made during the month of October"), with Ill. Rev. Stat. 1989, ch. 120, ¶ 710 ("all applications for judgment and order of sale for taxes and special assessments on delinquent lands and lots and for judgment fixing the correct amount of any tax paid under protest shall be made during the month of October"). The 1994 amendments to the Code did not alter the finality or effect of default judgment in proceedings on the collector's application for judgment and order for sale of properties that remained on the delinquency list.

¶ 113   The majority asserts, "a circuit court does not have the authority to review the correctness of a contested assessment when a collector makes an application for judgment and order of sale. That occurs in an entirely separate proceeding, either in a tax objection complaint or in an appeal before the PTAB." *Supra* ¶ 51.

¶ 114   The court that addresses the application for judgment and orders for sale does not pass judgment concerning objections filed under section 23-10 because properties for which the owners paid the taxes under protest do not appear on the delinquency list and therefore they do not appear on the application for judgment and orders for sale. See 35 ILCS 200/21-150, 23-10 (West 2014). The court only passes judgment on properties, like Grand Tower's, on the

delinquency list. The Jackson County circuit court's judgment and order for sale, according to section 21-180, establishes "the amount of taxes *** due" for each property on the delinquency list. *Id.* § 21-180. The amendment to section 21-150 has no effect on owners whose properties, like Grand Tower's, appear on the delinquency list and who fail to file a defense to the collector's application for a judgment and an order for sale.

¶ 115                6. The Legislature Did Not Include a Provision
for PTAB to Retain Jurisdiction Over Properties That
Appear on the Delinquency List

¶ 116    The majority asserts, "The legislature knows how to divest the PTAB of jurisdiction." *Supra* ¶ 45. The majority stresses that the Code does not explicitly state that PTAB loses jurisdiction. See *supra* ¶¶ 44-45.

¶ 117    Code provisions also show the legislature knew how to provide for continuing jurisdiction of administrative agencies over properties that appear on the delinquency list.

¶ 118    Section 21-175 of the Code provides that, "if a defense is made that the property *** is exempt from taxation and *** a proceeding to determine the exempt status *** is pending ***, the court shall not enter a judgment relating to that property until the proceedings *** have terminated." 35 ILCS 200/21-175 (West 2014).

¶ 119    The Code includes no similar provision for continuing PTAB's jurisdiction over a pending claim that the board of review imposed an excessive tax. The absence of a similar provision for cases in which an owner filed an appeal with PTAB shows that the legislature intended the proceedings on the collector's application to finally determine the amount of the property owner's tax liability, despite a pending appeal before PTAB, if the property appeared on the delinquency list.

¶ 120    The Code did not need an explicit provision providing that PTAB loses jurisdiction when the circuit court enters a default judgment because the *res judicata* effect of the default judgment, entered because the property owner failed to answer the application, established the amount of property taxes owed. The Jackson County circuit court's January 14, 2016, default judgment for $2,557,423.91 in unpaid 2014 property taxes, after 30 days, became *res judicata*—a matter decided—and left PTAB with nothing to decide, regardless of whether a statute specifically states it loses jurisdiction.

¶ 121                7. The Majority's Other Arguments Do
Not Support the Majority's Decision

¶ 122    Next, the majority acknowledges the Civic Federation's 1995 report as part of the Code's legislative history. *Supra* ¶ 50 n.3. The Civic Federation's report did not suggest any change to section 22-75(b) or to the *res judicata* effect of default delinquency judgments.

¶ 123    Finally, the majority claims that a finding that a default delinquency judgment finally determines a property owner's tax liability would lead to the unfair result that an owner could nullify a taxing body's appeal to PTAB for an increase in the tax on the owner's property. *Supra* ¶ 46. The majority says, "when a county files an appeal with PTAB, a taxpayer could simply withhold payment of the property taxes and wait until the county collector applies for the annual judgment and order of sale, thereby divesting the PTAB of its jurisdiction to hear the county's appeal." *Supra* ¶ 46. No provision of the Code prevents the county or another

- 21 -

interested taxing body from objecting to the entry of a default delinquency judgment on grounds that the collector has not required a sufficient amount for the property tax payment. The taxing body's objection, like a timely defense from a property owner, removes the property from the list of properties subject to the default delinquency judgment, allowing PTAB to complete its review of the board of review's assessment of the property.

¶ 124                                    III. CONCLUSION

¶ 125     In 2016, the Jackson County circuit court, ruling on an application for a judgment of tax liability and an order for sale, entered a final judgment holding that Grand Tower owed $2,557,423.91 in unpaid taxes for 2014, based on the board of review's finding that the property had an assessed value of $31,538,245. No party appealed from the Jackson County circuit court's judgment. More than three years later, PTAB entered an order with a conflicting finding that Grand Tower's property had a market value for 2014 that would support an assessed value of $3,333,000.

¶ 126     The majority's decision affirming PTAB's order leaves standing two incompatible judgments for Grand Tower's liability for 2014 property taxes and ignores the *res judicata* effect of the Jackson County circuit court's default delinquency judgment. Prior to today's decision, Illinois courts have consistently held that a circuit court's default judgment entered on an application for judgment and order for sale for unpaid property taxes conclusively determines the amount of taxes the property owner owes. *Markle*, 31 Ill. 2d at 436-37; *United Legal Foundation*, 272 Ill. App. 3d 666; *Hagerty*, 104 Ill. App. 3d at 243; *Vulcan Materials*, 96 Ill. 2d at 165; *Tully*, 76 Ill. App. 3d at 341; *Chicago Title & Trust*, 50 Ill. App. 3d at 389. Therefore, because the majority (1) ignores the *res judicata* effect of the Jackson County circuit court's judgment as a bar to a second proceeding by PTAB to determine Grand Tower's tax liability for 2014, (2) misconstrues section 22-75(b) of the Code, which explicitly estops Grand Tower from challenging the finding that it owed $2,557,423.91 in unpaid taxes for 2014, (3) ignores or misinterprets consistent well-reasoned precedent, and (4) destabilizes funding for Illinois counties by misconstruing the Code (35 ILCS 200/1-1 *et seq.* (West 2014)), I respectfully dissent.

¶ 127     JUSTICE HOLDER WHITE joins in this dissent.